IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JONATHAN DAVID SHEPARD, individually as representative of the ESTATE OF LACY DAWN CUCCARO, and as Next Friend for A.L.S. and N.L.S, Minor Children, | § § § § § § | |
| Plaintiff, | § § | NO. 2:14-CV-147-J |
| v. | § § | |
| HANSFORD COUNTY and BRENDA VERA, individually, | § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

On August 26, 2014, Defendants filed a *Motion to Dismiss*, seeking dismissal of Plaintiff's claims against Defendants Deputy Sheriff Brenda Vera and Sheriff Gary Evans under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. On September 16, 2014, Plaintiff filed an *Unopposed Stipulation of Dismissal of Claims Against Gary Evans*, which this Court granted on September 19, 2014. Plaintiff also filed a response to Defendants' motion to dismiss on September 16, 2014, in which Plaintiff informed the Court that he was not making 42 U.S.C. § 1983 claims against Defendant Brenda Vera based on any supervisory capacity she might have. Given this substantial narrowing of Plaintiff's claims, the only remaining issue for purposes of this motion to dismiss is whether Plaintiff has failed to state a claim under 42 U.S.C. § 1983 against Defendant Brenda Vera, in her individual capacity, for her personal participation in the alleged constitutional deprivations suffered by Plaintiff's late wife, Lacy Dawn Cuccaro.

1

## BACKGROUND

On July 16, 2012, Lacy Dawn Cuccaro ("Lacy") was arrested by an officer of the Gruver Police Department and booked in the Hansford County jail. At the time of her arrest, Lacy suffered from numerous mental health issues, including depression, anxiety, and bi-polar disorder. The following day, Lacy's sister Melissa Cuccaro ("Melissa") went to the jail to determine whether Lacy had a sufficient supply of her medication. During this visit, Melissa informed Hansford County Sheriff Gary Evans "that Lacy had mental health issues and . . . should be relocated to a mental health facility." Sheriff Evans informed Melissa that Lacy was being watched closely and would be fine. During this visit, an unidentified jailer spoke to Melissa and promised to obtain refills of Lacy's medication.

Melissa returned to the jail on July 18, 2012 to give money to Lacy so that she could buy snacks and make phone calls. Melissa asked an unidentified jailer about Lacy's condition and the jailer stated that "Lacy was doing good." Melissa also informed the jailer that Lacy could become suicidal unexpectedly and asked that Lacy be watched closely. The jailer again assured Melissa that Lacy was being watched carefully.

On July 19, 2012, Melissa and Lacy's husband, Plaintiff Jonathan David Shepard, went to the jail to visit Lacy. Upon arriving, they were escorted to Sheriff Gary Evan's office where Mr. Evans informed them that Lacy had committed suicide by hanging herself in the shower. Mr. Evans also informed Melissa and Plaintiff Shepard that Texas Ranger Jamie Downs would be investigating Lacy's death to definitively determine whether it was a suicide. After receiving confirmation from Ranger Downs that Lacy's death was indeed a suicide, Melissa contacted the Texas Attorney General's office, the Texas Commission on Jail Standards, and the Texas Rangers to obtain documents and other evidence relating to Lacy's suicide. Melissa received jail

2

records, Lacy's autopsy report, papers showing the Hansford County Jail's noncompliance with rules regarding the monitoring of suicidal inmates, photos, and a video. The video ran from 10:30 AM to 11:00 AM and begins with a view of Lacy crying at a picnic table in front of her cell. Lacy then uses an intercom system to ask Defendant Deputy Sheriff Brenda Vera for permission to make a phone call, which Defendant Vera denies. The video then shows Lacy, still crying, measuring herself on the bars of her cell, tying a white towel to the bars of the cell, and then tying the towel around her neck. Eventually, Lacy takes the towel and walks towards the shower. According to Plaintiff, the video initially shows that Lacy was crying and moving around in the shower. Eventually, the crying stops, and the shower curtain begins to move. After a few minutes, the shower curtain stops moving and the video ends.

Plaintiff alleges the following discrepancies between the video and Defendant Brenda Vera's written statements regarding the events surrounding Lacy's suicide. First, Defendant Vera states in the jail's cell check records that she checked on Lacy several times before and after Lacy's death and that Lacy was asleep in her bed. However, Plaintiff alleges that there is no evidence in the video that Defendant Vera ever checked on Lacy. Second, Defendant Vera made a sworn statement to the Texas Rangers in which she stated that Lacy asked for a comb. However, Plaintiff alleges that the video clearly reveals Lacy asking for a phone call, not a comb. Finally, Defendant Vera stated that Lacy was in good spirits during the moments before her death. However, Plaintiff alleges that the video shows Lacy crying and visibly upset.

In Defendant Vera's answer, filed on November 11, 2014, Ms. Vera appears to admit that she was the "jailer" who spoke with Melissa Cuccaro on July 18, 2012, when Ms. Vera states, in reference to the sixth sentence of the tenth paragraph of Plaintiff's Original Complaint, that "the Defendant admits only that the Deceased's sister discussed the history of her sister."

Furthermore Defendant Vera also admitted "that the Screening Form for Suicide and Medical and Mental Impairments reflects that Lacy Dawn Cuccaro had attempted suicide previously."

Plaintiff's Original Complaint, filed on June 23, 2014, asserts a claim under 42 U.S.C. § 1983 for alleged deprivation of Lacy Cuccaro's Fourth Amendment rights, as applied to the states through the Fourteenth Amendment. However, as Defendants note in their motion to dismiss, Plaintiff does not allege facts related to the Fourth Amendment's protections against unreasonable searches and seizures. Instead, Plaintiff's complaint alleges facts suggesting a violation of the Due Process Clause of the Fourteenth Amendment. Accordingly, the Court will construe Plaintiff's complaint as alleging a violation of Lacy Cuccaro's Fourteenth Amendment due process right to not have her serious medical and safety needs met with deliberate indifference.

## STANDARD FOR MOTIONS TO DISMISS

A motion to dismiss under Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted, is to be evaluated on the pleadings alone. *See Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986). A plaintiff's claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although the pleading standard of Rule 8 does not require detailed factual allegations, it does require more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Formulaic recitations of the elements of a cause of action will not suffice. *See id.*

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When making this inquiry, a court must construe the complaint liberally, in favor of the plaintiff, "and assume the truth of all pleaded facts." *Oliver v.*

4

*Scott*, 276 F.3d 736, 740 (5th Cir. 2002). Although a court cannot dismiss a claim because it seems likely that the plaintiff will be unsuccessful, the pleadings must still be "factually suggestive" beyond mere conclusory allegations. *Ollie v. Plano Indep. Sch. Dist.*, 564 F. Supp. 2d 658, 660 (E.D. Tex. 2008). Factual allegations must be enough "to raise a right to relief above the speculative level" when assuming all factual allegations as pleaded are true. *Id.* (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under § 1983, a plaintiff must allege facts that show that he has been deprived of a right secured by the Constitution and the laws of the United States and that the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-56 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005). A plaintiff can sue an individual state or municipal government official under § 1983 through one of two theories of liability: (1) an individual-capacity theory (sometimes referred to as "personal-capacity"), or (2) an official-capacity theory. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (discussing the importance of distinguishing between official-capacity and personal-capacity suits under § 1983). Here, Plaintiff's Original Complaint states that Deputy Sheriff Brenda Vera is being sued in her individual capacity.

In an individual capacity suit under § 1983, the plaintiff must plead and show that the defendant (A) deprived plaintiff of rights secured by the constitution or laws of the United States; (B) while acting under color of state law; and (C) caused injury by the deprivation. *See*

*Batiste v. City of Beaumont,* 421 F. Supp. 2d 969, 981 (E.D. Tex. 2005) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)); *Augustine v. Doe*, 740 F.2d 322, 324-25 (5th Cir. 1984).

### A. DEPRIVATION OF CONSTITUTIONAL RIGHTS

The Fifth Circuit has held that states owe a duty under the Due Process Clause of the Fourteenth Amendment to provide pretrial detainees with certain basic human needs during their time of confinement, including medical care and protection from harm. *See Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996) (en banc); *Whitt v. Stephens Cnty.*, 236 F. App'x 900, 902 (5th Cir. 2007). This due process right includes the right to protection from known suicidal tendencies. *See Flores v. Cnty. of Hardeman, Tex.*, 124 F.3d 736, 738 (5th Cir. 1997).

When analyzing constitutional challenges by pretrial detainees, the applicable legal standard depends on whether the plaintiff's challenge is properly categorized as an attack on a condition of confinement or as an episodic act or omission by an individual official. *See Hare*, 74 F.3d at 644-45. Here, the Court will treat Plaintiff's Original Complaint as alleging an episodic act or omission claim against Defendant Vera in her individual capacity, because it focuses on a single individual's misconduct. *See Hetchler v. Rockwall Cnty. Tex.*, No. 3:08-CV-0551-B, 2009 WL 1160284, at *4 (N.D. Tex. Apr. 27, 2009) (citing *Flores*, 124 F.3d at 738). For an episodic act or omission claim, the plaintiff must establish that the individual defendant acted with subjective deliberate indifference to the pretrial detainee's constitutional rights. *See Hare*, 74 F.3d at 649 & n.4.

Where the basis for a § 1983 claim is an individual official's failure to protect inmates from their own suicidal tendencies, the subjective deliberate indifference test has two prongs: the plaintiff must show that the prison official (1) had actual subjective knowledge of the substantial

risk of suicide, and (2) responded to this knowledge with deliberate indifference. *See Whitt v. Stephens Cnty.*, 236 F. App'x 900, 902 (5th Cir. 2007) (citing *Hare*, 74 F.3d at 650); *see also Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000) ("[i]t is well-settled in the law that 'a state official's episodic act or omission violates a pretrial detainee's due process rights to medical care [and protection from harm] if the official acts with subjective deliberate indifference to the detainee's rights'").

### 1. *Actual subjective knowledge of a substantial risk of suicide*

Plaintiff's Original Complaint does not explicitly allege that Defendant Brenda Vera had actual subjective knowledge that Lacy Cuccaro posed a suicide risk. However, the complaint does allege that Lacy's sister Melissa Cuccaro "begged the jailer to watch Lacy closely because Lacy could go from being fine to suicidal in seconds." In Defendant Brenda Vera's answer, Ms. Vera seems to acknowledge that she was this generic "jailer" who spoke with Melissa Cuccaro about Lacy's suicidal tendencies, because she admits "that the Deceased's sister discussed the history of her sister" with Defendant Vera. Furthermore, in Defendant Vera's answer, she "admits that the Screening Form for Suicide and Medical and Mental Impairments reflects that Lacy Dawn Cuccaro had attempted suicide previously." Accordingly, Plaintiff has alleged sufficient facts which, if true, would establish that Defendant Brenda Vera had actual subjective knowledge that Lacy Cuccaro posed a substantial risk of suicide.

### 2. *Responding to a suicide risk with deliberate indifference*

Deliberate indifference is a particularly high standard to satisfy and requires the plaintiff to establish more than mere negligence or oversight on the part of the defendant officer. *See Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006); *Jacobs*, 228 F.3d at 395. To show deliberate indifference in the context of an episodic act or omission by a state official, the

plaintiff must establish (1) that the defendant official was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, (2) that the defendant official actually drew that inference, and (3) that the defendant official's response to the risk indicates that he or she subjectively intended that harm to occur. *See Brown v. Strain*, 663 F.3d 245, 249 (5th Cir. 2011); *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002); *McIlwain v. San Jacinto Cnty.*, No. CIV.A. H-10-2293, 2012 WL 5336146, at *9 (S.D. Tex. Oct. 26, 2012).

Here, Plaintiff's Original Complaint alleges sufficient facts which would, if true, establish that Defendant Brenda Vera acted with deliberate indifference to the risk that Lacy Cuccaro would commit suicide while detained in the Hansford County jail. First, Plaintiff alleges that Defendant Vera, upon being told by Melissa Cuccaro that Lacy had suicidal tendencies, informed Melissa that the staff was closely watching Lacy and that there was nothing to worry about.[1] Defendant Vera further admitted, in her answer to Plaintiff's Original Complaint, that information about Lacy's suicidal tendencies had been recorded on a jail screening form. Second, Plaintiff alleges that Lacy was crying and visibly upset during the thirty minutes prior to her suicide. Third, Plaintiff alleges that Defendant Vera failed to check on Lacy for a period of at least thirty minutes; and that during this time, Lacy was left alone in a prison cell with a towel and a shower curtain—two items that common knowledge suggests could easily be used to achieve suicide by asphyxiation.

Construing these alleged facts in the light most favorable to Plaintiff, and assuming the truth of all pleaded facts, Plaintiff's complaint suggests that Defendant Vera (1) was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed—

---

[1] As discussed earlier in this opinion, Plaintiff's Original Complaint does not specifically refer to Brenda Vera when describing this incident, but instead refers to a generic "jailer." However, Defendant's answer admits that Melissa Cuccaro spoke with Brenda Vera about Lacy's history of mental illness and references the specific paragraph in Plaintiff's Original Complaint where this conversation is alleged. Accordingly, the Court will assume, for purposes of this motion to dismiss, that Defendant Brenda Vera is the jailer referred to in the tenth paragraph of Plaintiff's Original Complaint.

namely, Lacy's suicidal tendencies; (2) actually drew that inference—as evidenced by Defendant Vera's promise to watch Lacy closely; and (3) responded to that risk in a manner that suggests she subjectively intended Lacy to suffer serious harm—as evidenced by her failure to check on Lacy or otherwise limit her access to items with which she could commit suicide. *See Brown v. Strain*, 663 F.3d 245, 249 (5th Cir. 2011) (articulating the three categories of evidence that a plaintiff must present to establish deliberate indifference to a pretrial detainee's constitutional rights). These factual allegations are sufficient to establish that Defendant Vera deprived Lacy Cuccaro of her Fourteenth Amendment rights by acting with deliberate indifference to the substantial risk that Lacy might commit suicide while detained in the Hansford County jail. *See Duran v. City of Eagle Pass*, No. SA-10-CA-0504, 2010 WL 3928540, at *6 (W.D. Tex. Oct. 5, 2010) (finding that plaintiff's allegations were sufficient to satisfy the subjective deliberate indifference prong of a § 1983 claim where jail officials were aware that the decedent was suicidal, yet left him unmonitored in a detention cell with objects that could be used for self-asphyxiation), *vacated on other grounds by Duran v. City of Eagle Pass*, No. SA-10-CA-0504-XR, 2011 WL 294478 (W.D. Tex. Jan. 26, 2011).

### B.  UNDER COLOR OF STATE LAW

"[A]n act is under color of law when it constitutes a '[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *United States v. Causey*, 185 F.3d 407, 442 (5th Cir. 1999) (quoting *Monroe v. Pape*, 365 U.S. 167, 184 (1961)). Plaintiff has pled sufficient facts to establish that Deputy Sheriff Brenda Vera was acting under the color of state law at the time of the alleged constitutional deprivations. The parties do not dispute that employees of a county sheriff's office act under the color of state law when they detain individuals in the county jail.

### C. CAUSED INJURY BY THE DEPRIVATION

Plaintiff has also pled sufficient facts to establish that Deputy Sheriff Brenda Vera caused injury to Lacy Cuccaro as a result of the alleged constitutional violations—namely, Lacy's suicide on July 19, 2012.

In sum, Plaintiff has alleged facts which would, if true, establish that Defendant Deputy Sheriff Brenda Vera, while acting under the color of state law, deprived Lacy Cuccaro of her rights under the Due Process Clause of the Fourteenth Amendment, and caused injury to Lacy as a result of the deprivation. Plaintiff's Original Complaint states a valid claim upon which relief can be granted under 42 U.S.C. § 1983. Accordingly, Defendant's Motion to Dismiss is denied.

### CONCLUSION

Defendant's Motion to Dismiss is DENIED.

IT IS SO ORDERED.

Signed this the 24th day of November, 2014.

MARY LOU ROBINSON
**UNITED STATES DISTRICT JUDGE**